# FEBRUARY, 1924

GALVESTON-HOUSTON ELECTRIC RAILWAY COMPANY ET AL. v. LILLIAN W. REINLE ET AL.

No. 3770.   Decided February 13, 1924.

(258 S. W., 803.)

1.—Dangerous Premises—Electric Wires—Duty to Warn—Employee of Independent Contractor.

The proprietor of dangerous premises owes to persons lawfully coming thereon a duty to warn them against dangers created by conditions there maintained by him, such as the presence of high-tension electric wires; and this though the person injured thereby came on such premises as an employee, not of the proprietor, but of an independent contractor for construction work thereon possessing full knowledge of the danger. (Pp. 462-464).

2.—Same—Case Stated.

The proprietor of an electric railway, propelled by current carried on his premises by a highly charged overhead wire, was found guilty of neg-

○

ligence in failing to give warning of the danger to an employee of an independent contractor who was doing construction work thereon for such proprietor. The employee was killed by an electric discharge caused by machinery which he was operating coming in contact with or close to the charged wire. *Held* that the electric railway company was not relieved from liability on the ground that it owed no duty as master to the servant of an independent contractor lawfully at work on the premises. Its duty did not rest on the relation of master to a servant, but on that of the owner of dangerous premises to warn against danger persons permitted by it to come into such zone of peril. (Pp. 459-464).

### 3.—Cases Discussed.

City of Greenville v. Pitts, 102 Texas, 3; Geo. W. Armstrong & Co. v. Adair, 112 Texas, 439; Bustillos v. Southwestern Portland Cement Co., 211 S. W., 929; followed. Texas Traction Co. v. George, 149 S. W., 438, distinguished. (Pp. 462, 463).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Terry, Cavin & Mills*, for Galveston-Houston Electric Ry. Co., appellant.

Recovery of damages based on negligence is allowed only when there has been a breach of a legal duty by the defendant to the plaintiff. Larkin & Sangster, Inc., was an independent contractor for reconstructing the causeway, and was fully advised of the danger to its employees if machinery under their control was allowed to come into contact with or close proximity to the uninsulated wires. Appellant owed no duty to Reinle, one of the employes of Larkin & Sangster, Inc., to give him warning or instruction as to such danger. Texas Traction Company v. George, 149 S. W., 438; Wallace v. Southern Cotton Oil Co., 91 Texas, 18; Cooley on Torts, Third Edition, Page 1100; Thompson on Negligence, First White Supplement, Section 979; Ziebell v. Eclipse Lumber Company (Wash.) 74 Pac., 680; Central Coal & Oil Company v. Grider's Admr. (Ky.), 74 S. W., 1058; Kelleher v. Schmitt & Henry Mfg. Co. (Iowa), 98 N. W., 482; Southern Oil Co. v. Church, 74 S. W., 797.

*Hunt & Teagle*, for appelant U. S. Fid. & Guar. Co.

*Frank S. Anderson*, for appellee.

We believe the rule to be well settled, that an owner or occupant of lands, or buildings, who, directly or by implication, invites or induces others to go thereon, or therein, owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils. 20 R. C. L., p. 55, Sec. 51; Bennett v. Louisville & N. Ry. Co., 102 U. S., 577; Bustillos v. Southwestern Port. Cem. Co., 211 S. W. 929; 9 R. C. L., 1205, 1206; Greenville v. Pitts, 102 Texas, 1; Jacksonville Ice & Elec. Co. v. Moses, 134 S. W.,

379; Calvert v. Springfield Elec. Lt. & P. Co., 83 N. E., 184; Consolidated Ice Mach. Co. v. Keifer, 25 N. E., 799; Samuelson v. Cleveland I. M. Co., 13 N. W., 499; 14 R. C. L., 61, sec. 19; Donaldson v. Willison, 26 N. W., 842; Lowe v. Salt Lake City, 44 Pac., 1050; Sessangut v. Posey, 67 Ind., 408; Woodman v. Met. Ry. Co., 21 N. E., 482; Cobat v. Kingman, 44 N. E., 344; Pittsfield Ice Mfg. Co. v. Pittsfield Shoe Co., 53 Atl., 807; Johnson v. Spear, 76 Mich., 139; Bennett v. Louisville, etc., R. Co., 102 U. S., 577, 26 U. S. (L. ed.) 235; Newark Electric Light, etc., Co. v. Garden, 78 Fed., 74, 37 L. R. A., 725; Riedel v. West Jersey, etc., R. Co., 177 Fed., 374, 21 Ann. Cas. 746, 28 L. R. A. (N. S.) 98; Watson v. Manitou, etc., R. Co., 41 Colo., 138, 92 Pac. 17, 17 L. R. A. (N. S.) 916 and note; Pomponio v. New York, etc., R. Co., 66 Conn. 528, 34 Atl., 491, 50 A. S. R., 124, 32 L. R. A. 530; Atlanta Cotton-Seed Oil Mills v. Coffey, 80 Ga. 145, 4 S. E., 759, 12 A. S. R., 244; Hart v. Washington Park Club, 157 Ill. 9, 41 N. E. 620, 48 A. S. R. 298, 29 L. R. A. 492; Calvert v. Springfield Electric Light, etc., Co., 231 Ill., 290, 83 N. E., 184, 12 Ann. Cas. 423, 14 L. R. A. (N. S ) 782; Gascoigne v. Metropolitan West Side El. R. Co., 239 Ill. 18, 87 N. E. 883, 16 Ann. Cas. 115; Baltimore, etc., R. Co. v. Slaughter, 167 Ind 330, 79 N. E. 186, 119 A. S. R. 503, 7 L. R. A. (N. S.) 597 and note; Branham v. Buckley, 158 Ky. 848, 166 S. W., 618, Ann. Cas. 1915D, 861; Gosney v. Louisville, etc., R. Co., 169 Ky. 323, 183 S. W., 538, L. R. A. 1916E, 458; Thornton v. Maine State Agricultural Soc., 97 Me., 108, 53 Atl., 979, 94 A. S. R. 488; Manning v. Sherman, 110 Me. 332, 86 Atl. 245, Ann. Cas. 1914D, 89, 46 L. R. A. (N. S.), 126; Sweeney v. Old Colony, etc., R. Co., 10 Allen (Mass.) 368, 87 Am. Dec. 644; Elliott v. Pray, 10 Allen (Mass.), 378, 87 Am. Dec., 653; Davis v. Central Cong. Soc., 129 Mass. 367, 37 Am. Rep. 368; Hoyt v. Woodbury, 200 Mass. 343, 86 N. E. 772, 22 L. R. A. (N. S.) 730 and note; Pelton v. Schmidt, 104 Mich. 345, 62 N. W. 552, 53 A. S. R. 462; Morrison v. Carpenter, 179 Mich., 207, 146 N. W., 106, Ann. Cas. 1915D, 319; Klugherz v. Chicago, etc., R. Co., 90 Minn. 17, 95 N. W. 586, 101 A. S. R. 384; Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213, 48 A. S. R. 547, 26 L. R. A. 686 and note; Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321. Sebeck v. Plattdeutsche Volksfest Verein, 64 N. J. L. 624, 46 Atl. 631, 81 A. S. R. 512, 50 L. R. A. 199; Beck v. Carter, 68 N. Y. 283, 23 Am. Rep., 175; Wasson v. Pettit, 177 N. Y., 118, 22 N. E., 566, 5 L. R. A., 794; Boyd v. United States Mortg., etc., Co., 187 N. Y., 262, 79 N. E., 999, 116 A. S. R., 599, 10 Ann. Cas., 146, 9 L. R. A., (N. S.), 399; Rachmel v. Clark, 205 Pa. St., 314, 54 Atl., 1027, 62 L. R. A., 959; Boyce v. Union Pac. R. Co., 8 Utah, 353, 31 Pac., 450, 18 L. R. A., 509; Selinas v. Vermont State Agricultural Soc., 60 Vt., 249, 15 Atl., 117, 6 A. S. R., 114; Nichols v. Washington, etc., R. Co., 83 Va., 99, 5 S. E., 171, 5 A. S. R., 257; Clark v. Fehlhaber, 106 Va., 803, 56 S. E., 817, 13 L. R. A. (N. S.), 442; Kearney v. London, etc., R. Co., L. R. 6 Q. B., 759, 40 L. J. Q. B., 285, 24

L. T. N. S., 913, 20 W. R., 24, 19 Eng. Rul. Cas., 1; Heaven v. Pender, 11 Q. B. D., 503, 52 L. J. Q. B., 702, 49 L. T. N. S., 357, 19 Eng. Rul. Cas., 81 and note; Indermaur v. Dames, L. R. 1 C. P., 274, L. R. 2 C. P., 311, 35 L. J. C. Pl., 184, 36 L. J. C. Pl., 181, 19 Eng. Rul. Cas., 64; Southcote v. Stanley, 1 H. & N., 247, 25 L. J. Exch. 339, 19 Eng. Rul. Cas., 60; Calvert v. Springfield Electric Light, etc., Co., 231 Ill., 290, 83 N. E., 184, 12 Ann. Cas., 423, 14 L. R. A. (N. S.), 782; 14 R. C. L. p. 81 Section 19; Hoppe v. Winona, 113 Minn., 252, 129 N. W., 577, Ann. Cas., 1912A 247, 33 L. R. A. (N. S.), 449; A. M. Holter Hardware Co., v. Western Mortgage, etc., Title Co., (Mont.), 149 Pac. 489, L. R. A., 1915F, 835; Samuelson v. Cleveland Iron Min. Co., 49 Mich., 164, 13 N. W., 499, 43 Am. Rep., 456; Hagen v. Schleuter, 236 Ill., 467, 86 N. E., 112, 22 L. R. A. (N. S.), 856 and note; 20 R. C. L. p. 55, Sec. 51.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Question certified from the Court of Civil Appeals of the First Supreme Judicial District in an appeal from the District Court of Galveston County.

The Honorable Court of Civil Appeals at Galveston certified two questions to this court. It is agreed that one question has since become moot. For the purpose of determining the remaining question the following statement from the certificate will suffice, viz:

"The Gulf, Colorado & Santa Fe Railway Company, the Galveston, Houston & Henderson Railroad Company, and the Galveston, Harrisburg & San Antonio Railway Company, acting for themselves and for the County of Galveston, and for Galveston-Houston Electric Railway Company, hereinafter called the Interurban Company, entered into a contract with Larkin & Sangster, a corporation, to construct a portion of the causeway connecting Galveston Island with the mainland.

"By the terms of said contract Larkin & Sangster, corporation, obligated and bound itself to protect, indemnify and save harmless the Interurban and other Railway Companies, and any other person or persons, firm, or corporation claiming under them, including the causeway owners, against all claims, rights, suits or causes of action of every kind whatsoever which might be brought or lodged against it or them on account of personal injuries, death, loss or damage to property, or any other acts whatsoever growing out of, or connected with, or incident to, the prosecution of the work undertaken by it by the contract.

"While this work of construction was being done the steam roads and the Interurban used a single track wooden pile trestle for the transportation of their trains, connecting the original arched bridge portion of the causeway with Galveston Island. A line of poles in order to carry the Interurban wires was a part of this trestle. The trolley wire supplying current to the Interurban for running its cars was attached to arms extending over the track from

these poles and near the top of the poles attached to the opposite side of the track were three high tension electric wires belonging to and used by the Interurban, uninsulated and carrying 33,000 volts of electricity. These wires were some 40 or 45 feet from the ground upon which one Willie S. Reinle was standing at the time he met his death.

"On March 21, 1919, Reinle was and for several months had been in the employ of Larkin & Sangster in the capacity of foreman of a gang of men operating a derrick, with an engine as a part thereof, used in making excavations for the foundation of the new piers which Larkin & Sanster were engaged in constructing. A wire rope or cable ran from the drums attached to the engine of the derrick over a pulley attached to the end of a boom and thence down to or near the ground, at the ground end of which wire rope was attached a chain with a hook used for lifting buckets of excavated material or other substances. On the day on which he met his death, Reinle, who was in charge of the derrick, and who gave signals to the engineer for the movement thereof, the engineer being unable to see from his position in the engine house where the end of the derrick boom was located, signalled to the engineer to move the boom of the derrick in a direction toward the pile trestle, Reinle at that time holding on to the hook attached to the chain at the ground end of the wire rope running over the boom. The engineer moved the boom in accordance with Reinle's signals and as a consequence the boom swung so near to the high tension 33,000 volt wires above referred to as to cause the wire rope to come in contact with or in such close proximity to one of said wires as to cause a current of electricity to flow down said wire rope and through Reinle's body, causing practically instantaneous death.

"Larkin & Sangster, who were parties to the suit, were independent contractors, and as such employed many men in the construction of said causeway.

"Mrs. Lillian W. Reinle, the widow of Willie S. Reinle, deceased, in behalf of herself and as next friend of Doris Reinle, an infant daughter of the deceased, Willie S. Reinle, brought this suit against the Interurban Company to recover damages for the death of said Willie S. Reinle. Among other things, unnecessary to be mentioned, she alleged that Willie S. Reinle lost his life by reason of the negligence of the Interurban Company in failing to insulate its high voltage wires and in failing to give notice and warning to Reinle of the dangers attendant upon coming in contact with or in close proximity to said wires.

"The cause was submitted to a jury upon special issues and in answer to special issues Nos. 1, 2, 3, and 4 they found substantially as follows:

"Answer to No. 1: The Interurban Company was not guilty of

negligence in maintaining its high voltage wires in an uninsulated condition at and along the causeway where Reinle was killed.

"Answer to No. 2: The Interurban Company did not use ordinary care to give Reinle notice and warning of the danger attendant upon coming in close proximity to the high voltage uninsulated wires belonging to said company.

"Answer to No. 3: The Interurban Company did not use ordinary care to give Reinle notice and warning of the danger of coming in contact with the uninsulated wires of said company.

"Answer to No. 4: The failure on the part of the Interurban Company to give Reinle notice and warning of the dangers mentioned in answers to Nos. 2 and 3 was the proximate cause of the death of Reinle.

"Upon these answers judgment was rendered in favor of the plaintiffs against the Interurban Company.

"On appeal to this court the Interurban Company presents the following proposition:

"Recovery of damages based on negligence is allowed only where there has been a breach of a legal duty by the defendant to the plaintiff, and, the undisputed evidence showing that Larkin & Sangster, Inc., the causeway contractor, was an independent contractor as to this appellant for the purpose of reconstructing the causeway, and that such independent contractor was fully advised and absolutely knew of the danger to its employes if machinery under their control was allowed to come into contact with or close proximity to the uninsulated wires of this appellant, this appellant owed no duty to Willie Stephen Reinle, one of the employes of Larkin & Sangster, Inc., to give him warning or instruction as to such danger. The fact that the wires were uninsulated being also fully known by Larkin & Sangster, and it being an independent contractor, no duty was owed by this appellant to the employes of the independent contractor to insulate the wires. There being, therefore, no duty on this appellant in either of the respects above mentioned, and these being the sole grounds of negligence alleged against it by appellees, there was no basis in the evidence for the submission of any issue to the jury nor for the rendition of any judgment in appellee's favor against the Interurban, and the peremptory instruction in its favor should have been given."

The question which the Court of Civil Appeals deemed it advisable to certify is:

"The undisputed evidence showing that Larkin & Sangster, the causeway contractor, was an independent contractor as to the appellant Interurban Company for the construction of the causeway, was such appellant resting under any legal duty to Willie S. Reinle, deceased, to give him warning or notice as to the danger incident to permitting the boom, being operated under his direction as an employee of Larkin & Sangster, coming in contact with or in close proximity to the high voltage wires of said appellant?"

The nature of the work which the Interurban Company contracted for Larkin & Sangster to have performed necessitated the employment by the contractor of men within a zone of extreme danger created by the high tension wires. The contract involved an invitation by the Interurban Company to the contractor's employees to labor within the danger zone. How imminent the peril was cannot be questioned in the light of the testimony of the Interurban Company's superintendent as set out in the Company's brief. The facts therefore bring the case within the rule that one cannot, for his own advantage, invite others to come on, or to remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge.

Judge Cooley, for the Supreme Court of Michigan, said: "Every man who expressly or by implication invites other to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knew or ought to know of, and of which they are not aware." Samuelson v. Cleveland Iron Mining Co., 49 Mich., 170, 43 Am. Rep., 456, 13 N. W., 501.

Judge Strong, for the Texas Commission of Appeals, stated the general rule to be: "The owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders, or mere licensees coming upon it without his invitation, expressed or implied. If, however, such owner or occupant invites the public or particular members of it to come upon his premises, he owes to such persons the duty to have same in a reasonably safe condition and to give warning of latent or concealed perils." Bustillos v. Southwestern Portland Cement Co., 211 S. W., 929. The statement accords with the opinion of this court in City of Greenville v. Pitts, 102 Texas, 3, 14 L. R. A., N. S., 979, 132 Am. St., 843, 107 S. W., 50, and with the opinion of the United State Supreme Court in Bennett v. L. & N. R. R. Co., 102 U. S., 577, 26 L. Ed., 235, 236.

Texas Traction Company v. George, 149 S. W., 438, is relied upon as the only Texas case in point to sustain the proposition advanced in behalf of the Interurban Company. The case was decided by the Dallas Court of Civil Appeals. A writ of error was denied. The Court of Civil Appeals made express finding of fact: first, that there was no ground of negligence alleged which was unknown to George, for whose death damages were sought of the Traction Company; and, second, that the work which George was doing was not dangerous in itself and could easily have been done without coming in contact with the wires charged with electricity. The decision was that "under this state of facts, we think it cannot reasonably be said that the Texas Traction Company knowingly set in operation causes dangerous to the person of the deceased, without exercising the proper precaution to anticipate and prevent injury to him." It is because the facts on which the certified question is based are so

different that no conclusion similar to that in George's case can be reached herein. The facts of this case, as certified, warrant the conclusion that the Interurban Company was knowingly keeping in operation a force inherently dangerous to the person of Reinle in the regular performance, with necessary machinery, of his duty as an employee of Larkin & Sangster, without exercising due care to prevent his injury or death.

The opinion of the Texas Commission of Appeals in the case of George W. Armstrong Company v. Adair, 112 Texas, 439, 247 S. W., 851, was recently adopted by the Supreme Court. It was there declared to be the duty of a company controlling premises on which one could not come without incurring a danger inhering in the premises, to exercise ordinary care towards any person invited by the Company to remain about the premises, with respect to the giving of such warning as might be reasonably necessary to enable the invitee to escape harm.

The obligation resting on the user of wires highly charged with electricity to exercise reasonable care to avoid injury to all known to be rightfully coming into a place of danger from such wires, especially when coming to render a service beneficial to the user of the wires, is thus stated in 9 R. C. L., page 1206, section 16, viz: "This duty of using the necessary skill and prudence to prevent injury to persons coming in contact with their wires is imposed upon electric companies, not only as regards the public generally, but also with respect to any individual engaged in a lawful occupation in a place where he is entitled to be. Such persons are not trespassers or licensees bound to take the premises in the condition in which they find them." To the same effect see: Ennis v. Gray, 87 Hun., 360, 34 N. Y. Supp., 379; Clements v. Louisiana Electric Light Co., 44 La. Ann., 692, 16 L. R. A., 32 Am. St., 348, 11 So., 51; Illingsworth v. Boston Electric Line, 161 Mass., 583, 24 L. R. A., 553, 37 N. E., 778.

The distinction between this case and those denying recovery against an employer for negligence of the independent contractor is stated by the Supreme Court of New Hampshire in Pittsfield Cottonwear Mfg. Co., v. Pittsfield Shoe Co., 71 N. H., 530, 60 L. R. A., 116, 53 Atl., 809, in the following language: "The rule is that, where the liability sought to be enforced is based upon the principle of respondeat superior, if the person for whose negligence recovery is sought is himself an independent contractor, or the employee of one over whom as to the detail of his work the defendant has no control, liability cannot be enforced by invoking that doctrine. But, where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him."

The Supreme Judicial Court of Massachusetts in the case of Cobat v. Kingman, 166 Mass., 403, 406, 33 L. R. A., 45, 44 N. E. Rep., 344

and 345, declared: "Ever since Querman v. Burnet it has been considered settled law that one employing another is not liable for his collateral negligence, unless the relation of Master and Servant existed between them. So that a person employing a contractor to do work is not liable for the negligence of that contractor or his servants. On the other hand, a person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching to him, of seeing that duty performed, by delegating it to a contractor. He may bargain with the contractor that he shall perform the duty and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it."

There is no doubt that the independent contractor was under the duty to exercise ordinary care to give warning to its employees of the dangers incident to their work from proximity of the appliances with which they were required to labor to the deadly electric current carried by the Interurban Company's wires. Breach of this duty is not the basis of the Interurban Company's liability. It is the breach of the Interurban Company's own independent duty for which it is answerable. Failure of the contractor to perform its duty would in no wise relieve the Interurban Company from responsibility for the consequences of failure to perform its own duty to the contractor's employees.

The reason for the employer's liability for an injury occasioned like Reinle's is stated in Cooley on Torts to be: "If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible,  . . . .  for I cause acts to be done which naturally expose others to injury." 2 Cooley on Torts (3d Ed.), p. 1091.

The court answers that it was the duty of the Interurban Company to exercise ordinary care to give Reinle notice or warning of the danger of the boom coming in contact with, or in close proximity to, the uninsulated, high voltage wires, notwithstanding Reinle was an employee not of the Interurban Company but of the independent contractor, who possessed full knowledge of the danger.