## SUN OIL CO. v. KNETEN et al.

### No. 12014.

Circuit Court of Appeals, Fifth Circuit.

Dec. 12, 1947.

Rehearing Denied Jan. 7, 1948.

S. R. Greer and R. D. Cox, Jr., both of McAllen, Tex., for appellant.

James L. Lattimore and Joe Alsup, both of Corpus Christi, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Fred Henry Kneten, son of the plaintiffs, Caroline and Henry Kneten, was scalded to death by steam injected into a boiler inside of which he was working, as an employee and member of the crew of Jeff J. Allen, a boiler maker, who had made a contract with appellant to clean, repair, and generally overhaul a battery of three boilers belonging to appellant.

Appellant, on the date of the accident, was operating a drilling rig, the power for which was furnished by a battery of three gas-heated steam boilers numbered 33, 35, and 34, and placed in the order of those numbers in reference to each other. These three boilers were operated as a unit, with fuel, water, steam header, and blowdown exhaust pipes interconnected. Each boiler, however, was equipped with separate valves on these pipes so as to make possible the separate operation and control of each pipe that ran into each boiler.

On the morning of the accident the independent contractor, Allen, and his crew arrived at appellant's premises about 7 o'clock and began work on Boiler No. 33, after having on the previous day completed the work of cleaning and repairing Boiler No. 35. At the close of the work on the day before, employees of the defendant, in accordance with instructions from Allen, cooled Boiler No. 33 during the night, drained all steam and water, removed the gas burners, closed its valves, and had it

ready for the independent contractor and his crew when they arrived. In this condition the boiler was turned over to Allen, but Boilers 34 and 35 were kept in operation by defendant. All this was after the manner in which Allen had done the same work on Boiler No. 35 on the preceding day.

The fireman of the defendant in charge of the boilers was J. C. Copeland. When he came on the job that morning he made a check of all the valves on Boiler 33 and found that they were closed. He cautioned Allen and his employees, including the deceased, against opening any of the valves on Boiler 33 and explained the imperative necessity of keeping them closed. All supervision and control over the boilers and the repair work was turned over to Allen.

At about 2:30 P.M. the fireman opened the blowdown valve on Boiler No. 35 in order to permit the excess steam, water, and sediment in Boiler 35 to escape through the exhaust manifold into a brush area some distance away. During the day this operation had been repeated several times by Copeland without harmful results, but when the blowdown valve on Boiler 35 was opened at 2:30 the exhaust valve on Boiler 33 had in the meantime, in some manner unknown to anyone, been opened, whereby live steam and hot water passed into Boiler 33, scalding and burning Kneten so severely that he subsequently died.

Allen, the independent contractor, and as employer of deceased, carried Workmen's Compensation Insurance with the Traders and General Insurance Company, which company, after the death of Kneten, paid compensation to his parents in the sum of $5921.51. Thereafter the Insurance Company joined the parents of the deceased as plaintiffs in this suit against defendant as an allegedly negligent third party.

Twenty special issues were submitted to the jury and upon answers thereto the Court rendered a judgment, in favor of the Insurance Company, for the amount which it had paid out, and in favor of the mother of the deceased for the sum of $7328.49.

Two events occurred, without the happening of both of which the deceased would not have been injured, viz.: (1) The exhaust valve had been opened on Boiler 33 in which Kneten was working; (2) live steam from Boiler Number 35, which burned the deceased, passed into Boiler No. 33 through that open valve.

It is without dispute: (1) That the exhaust valve on Boiler 33 was closed when that boiler was turned over by the defendant to the independent contractor preparatory to the work being done by the latter; (2) that the valve was not opened by any employee of the defendant; (3) that there is no evidence that the defendant's fireman of the two boilers then in operation knew that the valve on Boiler 33 was open or that it had been opened since work thereon had been started by Allen; (4) that the defendant's fireman had on two or three occasions during that same day, after such work on Boiler 33 had been in progress for some time, opened up the "blowdown valve" actuating Boiler 35 for the purpose of reducing the water and sediment therein through the release of steam with no injury resulting as long as the valve on No. 33 had been kept closed, but that at 2:30 P.M. when the fireman again opened the "blowdown valve" on Boiler 35, the valve on Boiler 33 had been opened without the knowledge, and through no fault, of the defendant; (5) that had that valve not been opened, the accident would not have happened; (6) that there was no evidence that the valve was defective; (7) that the appellant neither had the right to exercise, nor did it exercise, any supervision or control over any of the employees of the independent contractor as to the manner in which they did their work.

The independent contractor, in the performance of his contract in cleaning the boilers, used an air hose, and all parties seem to think that the exhaust valve on No. 33 was likely opened by the air hose being pulled across or against the valve. This was conjecture, however, for no one knew how the valve had been opened.

Nevertheless, if the defendant's fireman had not injected the steam into the pipe that led to the valve on Boiler 33, the accident would likewise not have happened.

We have a situation, therefore, where an act of the defendant in putting steam into the boiler, combined with the act of the employees of the independent contractor in causing, or allowing, the exhaust valve on

Boiler 33 to be open, produced the injury. The important question, therefore, is whether or not the act of the defendant's fireman in opening up the blowdown valve on Boiler No. 35 for the purpose of releasing excess steam from Boiler 35, without first having made certain that the valve on Boiler 33 was closed, constituted negligence that proximately concurred in the production of, or proximately contributed to, or caused, the injury.

The jury, in answering the special issues submitted to it, made three findings against the defendant: (1) That the defendant had failed to have a sufficient number of blowdown valves on the exhaust pipe leading to Boiler 33, and that this was negligence proximately causing the injury; (2) that Copeland, the fireman, had failed to inspect the exhaust valve on Boiler 33 before opening the blowdown valve on Boiler 35, and that this was negligence proximately causing the injury; (3) that Copeland, the fireman, had failed to advise the independent contractor or any of his employees that he was preparing to blowdown Boiler No. 35, and that this was negligence proximately causing the injury.

■ We think that even if the jury's conclusion that defendant was negligent in not having a sufficient number of blowdown valves on the exhaust leading to Boiler 33 were correct, nevertheless, it was not the proximate cause of the injury; for it is undisputed in the evidence that if the valve on the pipe leading to Boiler 33 had been kept closed, the injury would not have occurred. The evidence shows without dispute that at all times when that valve had been closed and the blowdown valve on 35 was similarly opened during the day, no injury resulted. The proximate causes of the injury were allowing the valve to be open and the opening of the blowdown valve on Boiler 35 at the same time. Had that valve on No. 33 been closed, there would have been no injury. Had the steam not been injected into a pipe that led through that open valve, there would have been no injury. Therefore, the answer of the jury that the failure to have an adequate number of valves on No. 33 was the proximate cause of the injury is without support in the evidence.

The answers to the two other special issues on which the jury found in favor of the plaintiffs will be grouped for discussion. In order to determine whether the jury's verdict in respect to these special issues can be sustained it will be necessary to determine the nature of the defendant's duty in the circumstances.

■ The owner of the premises, or the employer of an independent contractor, generally owes no duty to guard the employees of an independent contractor against the negligence of the latter. However, he is answerable for his own negligence—for his own want of due care in the circumstances. Moreover, if the negligence of an employer concurs with the negligence of his independent contractor and injuries thereby result to a third person, the employer is not absolved from liability merely because he has employed an independent contractor. The employer remains liable for the nonperformance of any duties arising out of the work that do not devolve upon the contractor or upon one employee. 27 Amer.Jur. 30, page 509. If the employer of the independent contractor reserves the right of supervision and control and the right to direct the manner in which the servants of the independent contractor perform their work,[1] he is under the duty to exercise reasonable care for their safety; or if he undertakes to furnish instrumentalities with which the contractor is required to perform the work, he owes to the employees of such contractor the duty of exercising ordinary care not to furnish them appliances that are known by him to be inherently dangerous.[2] It is also the law in Texas that when the work contracted for is unusually dangerous in itself, as the result of circumstances brought about by the owner or employer in the first instance, and injury proximately results from such conditions, the employer is responsible to servants of the independent contractor for such injuries.[3]

[1] Amacker v. Skelly Oil Co., 5 Cir., 132 F.2d 431.

[2] 23 Tex.Jur. 21, page 569; Harbour v. Graham Manufacturing Company, Tex. Civ.App., 47 S.W.2d 700.

[3] 23 Tex.Jur. 22, page 569.

■ Where the work of the defendant is being carried on connectedly and concurrently with the work of the independent contractor, we think that the employer is liable as a joint wrongdoer if his own failure to exercise due care in the circumstances concurred with the negligence of the contractor in producing the injury. See Note 3, 30 A.L.R. 1508, and cases annotated thereunder.

■ The operation of the two boilers in the generation of steam, the blowing off of the steam to eliminate excess water and sediment from the boilers, was in furtherance of the operation of the defendant. Had no steam been generated or blown off, none would have entered Boiler 33 and no injury would have occurred. In the carrying on of its operation simultaneously and in such close proximity to the cleaning and repairing of Boiler 33, there was a duty upon defendant to exercise reasonable care not to injure the employees of the independent contractor.[4]

■ Whether or not the work of repairing and cleaning the boiler in such close proximity to, and so directly connected with, the two other boilers of the defendant, at a time when said boilers were in active operation necessitating the blowing down of the dangerous agencies of steam and scalding water in such fashion that it was possible for same to enter the boiler where deceased was working, was work inherently dangerous, and whether or not the defendant, in opening up the blowdown valve in Boiler 35, failed to exercise reasonable care, knowing that same was in direct connection with the exhaust pipe and valve on Boiler 33, without first seeing that the valve on Boiler 33 was closed or without warning the deceased at a time when the fireman could have discovered by the exercise of reasonable care that an employee of the independent contractor was in Boiler 33, was a failure to exercise due care under the circumstances, are questions over the answers to which the minds of reasonable men might differ, which were properly submitted to the jury.

■ Whether the opening of the blowdown valve, whereby steam was thrust into the boiler wherein the deceased was working, which admittedly was an act of defendant, concurred in proximately causing the injury, and whether that was a negligent breach of duty by the defendant, was a question of fact for the jury. The jury answered in the affirmative and we cannot say that the verdict is without substantial support in the evidence.

The judgment of the Court below is affirmed.

---

[4] Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W.2d 970.