Dorothy WATSON

v.

**Clifford L. ALEXANDER, Secretary of the Army and Jonathan Systems.**

Civ. A. No. TX–80–73–CA.

United States District Court,
E. D. Texas,
Texarkana Division.

Feb. 26, 1982.

E. Ben Franks, Arnold, Lavender, Rochelle, Barnette & Franks, Texarkana, Tex., for plaintiff.

Bob Wortham, U.S. Atty., Beaumont, Tex., M. Lawrence Wells, Asst. U.S. Atty., Tyler, Tex., for United States.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

Dorothy Watson, the plaintiff, brought this suit against the United States and Jonathan Systems, a division of NL Industries, for the traumatic amputation of her right ring finger while she was employed as an ammunition worker at the Lone Star Army Ammunition Plant. Jurisdiction is invoked under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Jonathan Systems has settled with the plaintiff and is no longer a party to this case. The case has been submitted to the Court on the briefs, exhibits and depositions filed by the parties.

## I THE FACTS

The plaintiff was injured on September 28, 1978, while she was working on an automatic body assembly machine tape fixture conveyor owned by the United States as part of the Lone Star Ammunitions Plant in Texarkana, Texas. She was an employee of Day & Zimmerman, Inc., an independent contractor of the defendant. Day & Zimmerman operated the plant under a contract with the Department of the Army whereby Day & Zimmerman employees manufactured the ammunitions on machinery and with supplies owned by the United

---

1. This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law Re- quired by Rule 52(a), F.R.Civ.P.

States. The United States operated a significant safety program at the plant.

At the time of the accident, the plaintiff was an ammunition worker on a Jonathan Automatic Body Assembly machine which assembled a washer and tape or ribbon to a fuse. The operation required seven employees: four operators to "hang" ribbons; two operators to load and unload fuses from the conveyor belt; and one inspector. The seven operators per machine rotated during the day, each operator spending one period in each position on the machine.

The machine was originally designed and installed for three positions along the straight conveyor. Subsequently, a fourth position was added on the corner where the conveyor makes a ninety degree turn. This fourth position, actually the first position to receive fuses, was added to increase the number of operators hanging ribbons to handle the number of fuses put on the conveyor without slowing the speed of the machine.

Along the straight portion of the conveyor was a metal ledge approximately six inches wide. On the ledge at each of the three stations along the straight section were three small containers or trays in which the operators stored washers used in the process. The three operators along the straight portion kept their ribbons on this six inch ledge. The procedure called for placing a washer held in one hand over a ribbon, held in the other, and attaching them to a fuse as fuses came down the assembly line.

When the fourth station was added on the corner, no provision was made for storage of the washers and ribbons as the six inch ledge was, at least partially, lacking as was the tray used for storing washers. The evidence was uncontradicted that all of the operators on all of the identical Jonathan Body Assemblers at the plant stored ribbons underneath the conveyor on a ledge located there. Behind the ledge and under the conveyor was a chain and sprocket which drove the conveyor. Approximately five inches from the ledge where the ribbons were stored was a "pinch point,"

where the chain met the sprocket. The accident occurred when the plaintiff, working at this number four station, reached under the conveyor for a ribbon. Her finger was suddenly caught in the pinch point and amputated.

The evidence showed that both Day & Zimmerman's supervisors as well as United States government safety inspectors tacitly approved of the procedure used by the plaintiff and all other operators at that station until the day of the accident. The government approved the design of the machine and approved the addition of the fourth station on the corner.

After the accident, Day & Zimmerman modified the machine and the others like it by placing a guard over the pinch point and installing places level with the conveyor for employees to store washers and ribbons.

The "standard operating procedure" called for operators to store washers and ribbons on the ledge level with the conveyor. No provision was made in the standard operating procedure for employees who worked at position four where there was inadequate room to store ribbons and washers.

## II  CONTENTIONS OF THE PARTIES

### A.  Plaintiff's Contentions

The plaintiff contends that the United States is liable under the Federal Tort Claims Act (FTCA) under either or both of two theories: (1) strict products liability; and (2) negligent approval of the design of the defective machine.

### B.  The Defendant's Contentions

The government argues that it is not liable for the negligence of Day & Zimmerman or their employees, as Day & Zimmerman is an independent contractor and the United States was not responsible for the day to day operation of the plant. The government further argues that no negligence of any government employee contributed to the injury and that it cannot be liable under the Texas doctrine of vicarious

liability for injuries to employees of independent contractors performing inherently dangerous activities. Finally, the United States argues that the plaintiff is barred by the workers' compensation statute, as the government was ultimately responsible for the insurance premiums, and, in any event, that plaintiff's contributory negligence was the sole cause of the injuries.

## III  DISCUSSION

■ The Federal Tort Claims Act, 28 U.S.C. § 2674, provides in part that:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .

Liability is to be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

### A.  Strict Products Claim

■ Before deciding whether the United States would be liable under Texas law as a mere owner or supplier of the body assembly machine, the Court must first decide whether the FTCA encompasses claims in strict products liability. The seminal case on the issue is *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In that case, a large portion of Texas City was leveled by an explosion of ammonium nitrite fertilizer produced according to specifications and under the control of the United States. The United States Supreme Court held that the acts of negligence found by the trial court fit within the "discretionary function or duty" exception to the FTCA. *Id.* at 35–36, 73 S.Ct. at 967–968. The Court also discussed the possibility of absolute liability advanced by the trial court. The Supreme Court stated:

the statute requires a negligent act. So it is our judgment that liability does not arise by virtue of either United States

ownership of an "inherently dangerous commodity" or property, or engaging in an "extra-hazardous" activity.

*Id.* at 45, 73 S.Ct. at 972. This principle was reaffirmed in *Laird v. Nelms*, 406 U.S. 797, 802–03, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972).

The present case presents a slightly different situation, in that the Court is asked to impose strict liability for a defectively designed product, rather than absolute liability for ownership of an ultra-hazardous product or engaging in an extra-hazardous activity.

The Court is of the opinion that the FTCA does not extend governmental liability this far. Even though the FTCA on its face imposes liability to the same extent as a private individual according to the law of the state where the injury occurred, the Supreme Court's interpretation of the statute requires some fault or negligence on the part of a governmental employee. *See Laird v. Nelms*, 406 U.S. 797, 802–03, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972); *Dalehite v. United States*, 346 U.S. 15, 35, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953); *Johnston v. United States*, 603 F.2d 858 (5th Cir. 1979) affirming 461 F.Supp. 991 (N.D.Fla. 1978).[2]

### B.  Negligent Approval of the Design of the Machine

The Court finds that the Jonathan Body Assembly Machine, as modified by the addition of the fourth station was defective and unreasonably dangerous by reason of the exposed pinch point. The question, however, is whether the United States can be held liable for approving the design, and, if so, whether it was negligent in approving it.

■ First, it is clear that the United States cannot be held vicariously liable for the negligence of its independent contrac-

---

2. Even if the Court were to find that the United States could be liable under the Texas doctrine of strict products liability, the evidence in this case shows that the government did not design, manufacture, or sell the machine. The Department of the Army is merely the owner of the

machine; there has been no sale and the product has not been placed in the stream of commerce. Thus, the Texas doctrine of strict products liability would not apply against the United States in this case. *See, e.g. Armstrong v. Urquidez*, 570 S.W.2d 374 (Tex.1978).

tor, Day & Zimmerman. *See Logue v. United States*, 412 U.S. 521, 526–27, 93 S.Ct. 2215, 2218–19, 37 L.Ed.2d 121 (1973); *Aretz v. United States*, 604 F.2d 417, 426 (5th Cir. 1979). "[T]he liability of the United States . . . is consistent with the [FTCA] if there was some distinct act (1) of negligence (2) by government employees, which act was (3) operational." *Id.* at 417. Before determining whether any governmental employee breached a duty by approval of the design of the machine, the Court must look to Texas law to see if any duty existed to the plaintiff under the facts of this case.

The Court is guided by the case of *Alexander v. United States*, 605 F.2d 828 (5th Cir. 1979), involving an injury at the same ammunition plant. In *Alexander*, the plaintiff was also an employee of Day & Zimmerman and was injured while attempting to detonate and destroy a defective grenade. As in the present case, the United States "instituted a significant safety program," *id.* at 830, but the plant was operated by Day & Zimmerman. The district court found that the United States was negligent in failing to provide a safe place to work, failing to discover that the testing site was unsafe, in approving the testing apparatus, in not furnishing protective gear, in failing to conduct a safety system analysis, and approving the procedure for detonation which caused the injury. *Id.* at 831–32.

The Court of Appeals reversed, holding that "in view of the absence of any day to day control over the contractor's operations there is no basis for finding . . ." that a "safety program and the government's monitoring of it converts an independent contractor into some kind of joint venturer with the government." [3] *Alexander, supra* at 834. This holding forcloses a finding here that the government breached a duty to the plaintiff in negligently approving a defective design.[4]

---

3. The *Alexander* Court also held that the government could not be liable for the negligence of Day & Zimmerman under the "inherently dangerous work" exception to the rule of nonliability of the employer of an independent contractor. It was held:

> While Texas permits vicarious liability under the inherently dangerous activity doctrine, Texas recognizes no affirmative duty running to the employees of an independent contractor performing inherently dangerous work in a case such as this where the independent

contractor is in possession and control of the premises on which the work is performed. 605 F.2d at 835 (footnote omitted).

4. The *Alexander* case also found that the plaintiff's contributory negligence was the sole proximate cause of her injuries. Thus, the court's finding that there was no duty may be *obiter dicta*. Nonetheless, the Court finds this language strongly persuasive, or at least indicative of how the Court of Appeals would rule in the present case.