**Willie Bristol WATSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21858.**

United States Court of Appeals
Fifth Circuit.

June 1, 1965.

Jacob Rassner, New York City, for appellant.

Robert C. McDiarmid, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Edward E. Boardman, U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and RIVES and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by a seaman from an adverse judgment in a suit based upon alleged malpractice of a doctor of the Outpatient Clinic of the United States Public Health Service Hospital.

The agreed facts are that the appellant, a 56-year-old shrimp boat captain, working out of Ft. Myers, Florida, went to the Outpatient Clinic of the Public Health Service Hospital in Savannah, Georgia on February 23, 1960; he there saw a Doctor Morris; the hospital records make reference to a complaint by appellant of his right arm, a diagnosis by the doctor following an X-ray of the elbow, that Watson was suffering from a rupture of the long head of the biceps for which surgery would be required; that appellant wished to make his own arrangements prior to admission to the hospital; he was given a duty-status slip

marked "Not fit for duty" and "to return to clinic 3/2/60 for admission"; Watson returned to Tampa and took an additional trip lasting some six weeks; he returned without finishing the trip as planned, complaining of suffering from his right leg. He was found, on a local doctor's examination, to be suffering from high blood pressure, was given medication and sent back to the Savannah Public Health Service Hospital. He there was found to be suffering from arteriosclerosis obliterans. An arteriogram was done which showed an interruption of the flow of blood in the femoral artery of the right leg. It was decided that surgery was called for and an attempt was made to insert a bypass graft around the blocked portion of the artery. This attempt was unsuccessful and, thereafter, it became necessary to amputate Watson's right leg above the knee.

No negligence is complained of in the operation or any of the procedures following appellant's admission to the Savannah Hospital on April 20, the second date of admission. The negligence charged relates to an alleged failure of Doctor Morris on the first admission. In addition to the above facts that are not in dispute, appellant contends that when he first went to the Outpatient Clinic he had a limp and complained of an injury to his right leg, but no examination was made by the doctor, either of his blood pressure or the possible existence of arteriosclerosis; that he was then told to return but was given no hint of the existence of any dangerous condition that would require any prompt return. It is contended that, had Doctor Morris made the proper physical examination in light of the alleged symptoms, the condition of arteriosclerosis obliterans would have been diagnosed on February 13th with better likelihood of success, thus saving the right leg.

▉▉▉ The action having been brought under the Federal Tort Claims Act 28 U.S.C.A. § 1346(b), it is necessary to refer to the Georgia law with respect to liability for malpractice of surgery and medicine. The Georgia law requires that "[a] person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had" 84 Ga.Code Ann. 924. Under the Georgia decisions, it is clear that in order to recover under this statute a plaintiff must overcome a presumption that the medical services were performed in an ordinary skilled manner; carry the burden of showing a want of due care, skill and diligence; and do so by the expert testimony of physicians or surgeons. Shea v. Phillips, 213 Ga. 269, 98 S.E.2d 552; Hollis v. St. Joseph Infirmary Inc., 108 Ga.App. 309, 132 S.E.2d 841; Hayes v. Brown, 108 Ga.App. 360, 133 S.E.2d 102. This heavy burden of recovery under the Georgia cases has been applied to the extent of the Appellate Courts' affirming a summary judgment in favor of a defendant in such a malpractice act in the absence of a physician's affidavit to support the charge of malpractice. Hollis v. St. Joseph Infirmary Inc., supra.

The principal battleground here is the correctness of the trial court's finding of fact #6 to the effect that when appellant went to the Savannah Hospital on February 23 and 24th, 1960, he complained only about his arm, and did not "enter the hospital with a limp or complain to Doctor Morris of pain, numbness or coolness in his right" leg. The trial court expressly stated that this finding was "based upon the testimony presented and there inheres in this finding the matter of credibility of the witnesses."

Since appellant's entire case is posited on the proposition that Doctor Morris failed to exercise the required standard of care in failing to make the physical examination that would have disclosed his subsequently found arteriosclerosis obliteran, this finding, if supported, necessarily requires the affirmance of the trial court's judgment. The evidentiary basis of this finding was that Doctor Morris, who testified at the trial, iden-

tified the history from the records of the hospital and, based on the history, but without any independent recollection of the event, testified that he did not receive from Watson any complaint about his leg. He concluded this because this, he said, would have been a significant fact which he would have entered on the history as he took down the patient's complaints.

On the other hand, the trial court had before it the testimony of Watson, given by deposition, rather than in person, that he was limping with a sore right leg when he came to the Outpatient Clinic; that he complained of the condition of his leg; and that the doctor told him when he returned he would have an operation both for his arm and his leg. This testimony was supported, to some extent, by Watson's shipmate Noble, who testified at the trial that Watson had been limping prior to his leaving the ship to go to the hospital. Noble's testimony at the trial was vague and unpersuasive in many respects. This must be the basis for the trial court's statement that its finding on this matter was "based upon the testimony presented and there inheres in this finding the matter of the credibility of the witnesses" unless the court meant particularly to credit Doctor Morris' credibility in his effort to reconstruct from the hospital records what had happened several years previous, since, as stated above, Watson himself did not appear and testify at the trial. Nor, for that matter, did his wife, who drove him from Ft. Myers to the hospital at the time of his visit to the Outpatient Clinic on February 13th.

The Government further points out that even though the trial court had determined that appellant had complained of the injury to his leg and that Doctor Morris had improperly neglected to make a sufficient examination of the cause of such injury, Watson could not prevail in his case because of a lack of causal connection between such failure to make an adequate examination on February 13, and the ultimate loss of the leg in May. On this point, the trial court found in finding #9 "the only medical

testimony adduced on the effect of the delay between February 24th and April 25th was that there was no causal relationship between the said delay and the failure of the bypass graft. The court finds that had the bypass graft been attempted in February 1960, there would have been, to a reasonable degree of medical certainty, no greater likelihood of success of this operation, nor would there have been, to a reasonable degree of medical certainty, any benefit derived by plaintiff through the use of conservative treatment even if same were to have been initiated in February of 1960."

■ Upon carefully considering the testimony of the professional witnesses on the trial, we conclude that the Court had an adequate basis for this determination. Thus, it is clear that, even granted that there was a failure to examine Watson in such manner as would have disclosed the arteriosclerotic condition of his right leg in February, 1960, no recovery would be warranted because such condition was of such a nature as to have, to a reasonable degree of medical certainty, resulted in the same ultimate loss of the limb.

■ We conclude that the Outpatient Clinic or Hospital record used as the basis of Dr. Morris' testimony was properly considered by the trial court as warranting its conclusion that no complaint was made by the appellant at the time of his first visit. The positive testimony by the examining doctor that such a complaint would be considered by him as a "significant" complaint and that he uniformly entered all "significant" complaints on the medical history taken by him, fully warranted the acceptance by the trial court of the hospital record as excluding the theory advanced by the appellant. Moreover, as we have said, even though some negligence had occurred on this occasion, there was an ample evidentiary basis for the trial court's finding that a full and complete examination by Dr. Morris on February 13th would not have ameliorated to any significant degree the condition of ap-

pellant's leg that a few weeks later required the operation and amputation.

We have carefully considered appellant's additional supplemental brief filed after argument, together with the government's answer thereto. We conclude that no error occurred in the treatment of Dr. Robinson's testimony or in other rulings on admissibility of evidence.

The judgment is affirmed.