**Glenda LATHERS, et al., Plaintiffs,**

v.

**PENGUIN INDUSTRIES, INC.,
Defendant-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 81–1426.**

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1982.

Rehearing Denied Oct. 25, 1982.

---

Rufus S. Garrett, Jr., Fort Worth, Tex., for defendant-appellant.

William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant-appellee.

Before GEE and JOHNSON, Circuit Judges, and VAN PELT, District Judge *.

* District Judge of the District of Nebraska, sitting by designation.

JOHNSON, Circuit Judge:

Suit was filed by several plaintiffs alleging damages for personal injuries and wrongful death against Penguin Industries, Inc. (Penguin) and the United States. Penguin filed a cross-action against the United States for contribution. A federal district court, on December 17, 1980, granted plaintiff's motion for partial summary judgment, holding that state court proceedings had determined the issue of Penguin's liability and, therefore, collateral estoppel was appropriate. The state court, however, did not have jurisdiction over claims based upon the Federal Tort Claims Act (FTCA).

On April 29, 1981, the federal district court dismissed Penguin's cross-action and plaintiff's claims against the Government for failing to state a claim upon which relief may be granted under the FTCA. This order of dismissal was amended on June 25, 1981. Judgment was entered on August 11, 1981, for each plaintiff against Penguin. The judgment also provided that plaintiffs and Penguin take nothing from the United States government.

It is from this judgment, which denies Penguin contribution from the Government, that Penguin alone appeals. This Court affirms the judgment of the district court.

## I. *Facts*

In 1972, the United States government solicited bids for the assembly of hand grenade fuses. Gearheart-Owen, Inc. (GOI), a munitions manufacturer, submitted a bid, even though it did not have the appropriate equipment or machinery to produce the goods properly. The Government, nevertheless, conducted a pre-award survey of GOI to determine whether GOI was capable of properly producing the fuses if it was awarded the contract.

The pre-award survey included a review and approval of blueprints for facilities that GOI represented it would purchase in order to perform the contract. The production facilities were to be purchased from Penguin and included "crimping heads" designed by Penguin. The crimping heads were meant to contain an accidental explosion of a detonator during the crimping process and were intended to serve as an operational shield. The proposed facilities were also to include large, sand-filled concrete walls to separate the individual crimping areas from each other and from the remainder of the plant.

The Government awarded GOI the grenade fuse contract. While no government safety specialist was on permanent duty at the GOI plant, United States quality control representatives were assigned to the plant on a permanent basis. Periodic government inspections of the GOI plant were made. The record reflects that, pursuant to the contract, the Government could prescribe safety standards, perform safety inspections, and "direct the contractor to cease performance on all or part of [the] contract" if an unsafe condition existed.

A survey revealed that the large shielding walls contained in the pre-award blueprints were never installed. GOI informed the Government that the walls were unnecessary because the "crimping heads" were designed to serve as an operational shield and would protect the operator of the crimper and prevent any propagation of an explosion of a detonator inside the crimper head. The capacity of the crimping heads to serve as operational shields was tested pursuant to a Government order. The test revealed that, in practice, the head would not contain a typical explosion. Although both GOI and the Government were aware of this failure, the crimping heads were put to use without the benefit of the large shielding walls. The record indicates the employees of GOI, the independent contractor, were not made aware of the failure of the crimping heads to serve as an operational shield.

On July 10, 1973, there was an explosion at the GOI plant and a number of GOI employees were injured or killed. A jury trial in Texas state district court resulted in a finding that Penguin failed to design the crimping head mechanism in a way that would contain the explosion of a detonator, and such failure was negligent and the

proximate cause of the explosion. Damages were assessed against Penguin accordingly.

## II. *Penguin's Claim of Contribution*

■ Penguin appeals the federal district court's dismissal of its complaint that the Government was a joint tortfeasor and, therefore, liable to Penguin for contribution. The district court held that, under the FTCA and Texas state law, the Government had no affirmative duty to act, either by warning the independent contractor's employees of the danger or by stopping production when it learned that the crimping heads would not contain an explosion. The determination of the district court was not erroneous.

■ The FTCA subjects the United States government to liability for personal injury or death caused by "the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C.A. § 1346(b). " 'Employee of the Government' includes officers or employees of any federal agency." *Id.* at § 2671. " 'Federal agency' includes the executive departments and independent establishment of the United States ..., but does not include any contractor with the United States." *Id.* Consequently, the United States is not liable for the negligence of an independent contractor with the Government. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979); *Aretz v. United States*, 604 F.2d 417, 427 (5th Cir. 1979). In addition, the language of the FTCA has been interpreted as precluding "liability of the United States based on strict liability in tort." *Aretz v. United States*, 604 F.2d at 427 *citing Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

However, the United States may be liable for the breach of a duty owed to the employees of an independent contractor. The existence of a duty is a matter of Texas state law.[1] *See Aretz*, 604 F.2d at 428

citing 28 U.S.C.A. § 1346(b) and *Watson v. United States*, 346 F.2d 52, 53 (5th Cir. 1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 544, 15 L.Ed.2d 467 (1966).

Appellant Penguin relies upon the Texas case of *Schley v. Structural Metals, Inc.*, 595 S.W.2d 572 (Tex.Civ.App.—Waco 1979, no writ) to support its position that, under Texas law, a party such as the United States owes a duty of care to the employees of an independent contractor. According to Penguin, that duty includes shutting down the dangerous operation or warning the employees of a dangerous situation known to the employer even though the danger may be open and obvious.

Penguin's reliance on *Schley* is misplaced, however. While *Schley* might portend a significant change in Texas law, it is inapplicable to the case *sub judice*. *Schley*, which relies upon *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978), addressed the question of what duty a landowner owes to invitees on the landowner's premises. More specifically, the case addressed the duty of an employer who has invited an independent contractor and the contractor's employees onto the employer's premises to do work.

In the case *sub judice*, however, there was no landowner who had invited an independent contractor and the contractor's employees onto the landowner's premises. The only substantive resemblance between the case *sub judice* and *Schley* is that both cases involve independent contractors whose employees were injured or killed. Consequently, this Court must determine what duty Texas law places upon a person who, under the terms of a contract, has work or services performed by an independent contractor when the activity occurs somewhere other than the employer's premises.

■ The general rule is that, under Texas law, "a person having work or services performed by an independent contractor

---

1. As noted, the district court determined that under Texas state law the Government owed no duty to the employees of its independent contractor, GOI. This Court is "slow to substi- tute [its] judgment for that of the district judge who is experienced in dealing with Texas law." *Alexander*, 605 F.2d at 832.

. . . is not liable for injuries sustained by employees of an independent contractor." *Alexander,* 605 F.2d at 834 *citing Allen v. Texas Electric Service Co.,* 350 S.W.2d 866, 867 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.). There are two basic exceptions to this general rule. However, neither exception applies to the instant case and, therefore, the district court did not err in dismissing Penguin's complaint against the Government.

 Initially, under Texas law, a person that hires an independent contractor to perform inherently dangerous work has a nondelegable duty to assure the work is performed safely. *Alexander,* 605 F.2d at 834 *citing H. M. R. Construction Co. v. Wolco of Houston, Inc.,* 422 S.W.2d 214, 217 (Tex.Civ.App.—Houston [14 Dist.] 1967, writ ref'd n. r. e.), *Cage v. Creed,* 308 S.W.2d 78, 80 (Tex.Civ.App.—Waco 1957, no writ), and *Randle v. Naugle,* 299 S.W. 297, 300 (Tex.Civ.App.1927). This duty extends to third parties who are injured or killed as a proximate cause of the dangerous work. Any negligence of the independent contractor is imputed to the employer of the independent contractor. *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 67 (Tex.Civ. App.—Amarillo 1980, no writ) *citing Loyd v. Herrington,* 143 Tex. 135, 182 S.W.2d 1003, 1004–05 (1944). *See Alexander,* 605 F.2d at 835. "In Texas, however, an employee of the independent contractor is not a third party within the rule. Thus, the employer's liability does not extend to employees of the independent contractor." *Gray,* 602 S.W.2d at 67. Under the "inherently dangerous activity" exception to the general rule, Texas simply recognizes no affirmative duty running from a person employing an independent contractor to the independent contractor's employees "in a case such as this where the independent contractor is in possession and control of the premises on which the work is performed." *Alexander,* 605 F.2d at 835.[2]

In like manner, the second exception to the general rule of nonliability on the part of one having work or services performed by an independent contractor creates no duty running from the Government to the employees of its independent contractor in the case *sub judice.* The second exception involves Texas' recognition of an employer's duty of care owed to the employees of an independent contractor in instances "where the employer retains control over operative details and retains the right to direct the manner in which the employees of the independent contractor perform their work." *Alexander,* 605 F.2d at 835. The employer, here the United States government, must have "some operational responsibility for the existence of the situation having dangerous potentialities. Mere knowledge of a dangerous situation or helpless condition of another person only imposes a moral duty to warn or render aid but not a legal duty." *Ford Motor Co. v. Dallas Power & Light Co.,* 499 F.2d 400, 412 n.20 (5th Cir. 1974) (applying Texas law).

It is without question that the Government did not control the manner in which the operative details of the work were performed by the independent contractor in the case *sub judice.* GOI dictated how the hand grenade fuses were to be made and provided the material, labor, and facilities. The Government was interested in the ultimate result, but GOI independently determined the method and manner in which the desired results were to be attained.

This Court, of course, recognizes that the contract between the Government and GOI gave the Government the right to prescribe safety standards, perform safety inspections, and "direct the contractor to cease performance on all or part of [the] contract" if an unsafe condition existed. However, this authority to prescribe safety standards is not the equivalent of day-to-day supervision of the details of GOI's production of the hand grenade fuses. The record indicates that control over the day-to-day operations of the plant was vested in GOI and its plant manager David Levey. In

---

**2.** The United States, by virtue of the FTCA, is not liable for the imputed negligence of an independent contractor; the Government is lia-

ble only for the active negligence of its employees. *See Alexander,* 605 F.2d at 835.

fact, government safety inspectors surveyed the GOI premises only on a quarterly basis. No government safety specialist was on permanent duty at the GOI plant. While the Government had authority to terminate the contract or stop work on a particular contract for failure to comply, it could not shut down the GOI plant. This, of course, is consistent with the fact that GOI owned both the building, the facilities, and the operation.

Additionally, Lawrence DelRegal, who was the safety officer for the United States Defense Contract Administration Service Region, testified the safety of the GOI plant assembling the hand grenade fuses was not a part of his responsibility as an officer of the United States. As an officer, he was "charged with the surveillance of the plant to be sure [GOI was] *complying with the contract requirements.*" (emphasis added). He also testified, and the contract indicates, that the contractual safety provisions were for the protection of government people and government products and to ensure continued uninterrupted production.[3]

It is also significant that the *day-to-day* safety operations were supervised by the independent contractor itself. GOI had fulltime safety personnel on duty and promulgated a manual specifically aimed at safety in the production of the particular hand grenade fuses. In addition, the contract between the parties expressly stated that neither the government safety requirements "nor any act or failure to act by the Government in surveillance or enforcement thereof shall affect or relieve the Contractor of responsibility for the safety of his personnel and his property."

Texas courts "have repeatedly held that an employer has a right to exercise such control over an independent contractor that is necessary to insure the performance of the contract, in order to accomplish the results of the contract contemplated by the parties, without thereby making the con-

tractor an employee of such company." *Bullock v. W. W. Vending & Food Service of Texas,* 611 S.W.2d 713, 717 (Tex.Civ.App. —Tyler 1981, no writ). Although *Bullock* refers to Texas Workers' Compensation law and the question of whether an independent contractor is entitled to benefits under the appropriate Texas statutes, it clearly states Texas' position that an employer's control over factors assuring contract compliance is not the equivalent of control over the operative details of how the work is performed. Control over safety is an incidental power and "could not be said to constitute day-to-day supervision of [GOI's] operations, but [is] only a means of monitoring compliance with the contract and with government safety regulations." *Alexander,* 605 F.2d at 834.

Under Texas law and the facts of this case, the Government owed no legal duty of care to the employees of its independent contractor, GOI. Appellant Penguin, therefore, is not entitled to any contribution. This was the determination of the district court, and this Court affirms that judgment.

AFFIRMED.

---

**3.** This testimony was in response to substantial questioning by the district court. Subsequent to the district court's examination, DelRegal, upon re-direct examination by Penguin's coun-

sel, contradicted the substance of his previous testimony by testifying that the safety provisions were to protect GOI's employees.