Billy R. GOBER, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee,

FMC Corporation, Third Party Defendant-Appellee.

No. 84–7450.

United States Court of Appeals, Eleventh Circuit.

Jan. 2, 1986.

Thomas J. Knight, Anniston, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Henry I. Froshin, Mary P. Thornton, Asst. U.S. Attys., Birmingham, Ala., for defendant-appellee.

Ralph D. Porch, Anniston, Ala., for FMC Corp.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

TJOFLAT, Circuit Judge:

This is a Federal Tort Claims Act (FTCA) case, see 28 U.S.C. §§ 1346(b), 2671–2680 (1982), involving an accident that occurred in the State of Alabama.[1] The district court held that Alabama law provided the claimant, Billy R. Gober, no right of recovery on the facts presented and granted the Government summary judgment. We affirm.

## I.

The accident in this case took place at FMC Corporation's manufacturing plant in Anniston, Alabama, on July 9, 1981. The claimant lost several fingers on his right hand while operating a forging press manufactured by E.W. Bliss Company. FMC had leased the press from its owner, the United States government.[2]

On September 22, 1981, the claimant, pursuant to 28 U.S.C. § 2675 (1982), filed

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The FTCA provides that the law of the place where the alleged governmental negligence occurred applies to determine whether employees of the government acted negligently. 28 U.S.C. § 1346(b) (1982). It is undisputed that Alabama law is to be applied in this case.

2. The press was the subject of a government facilities contract. Under the terms of the contract FMC paid a fee for using the press. FMC could use the press on both government and non-government jobs. The claimant alleged,

with the Secretary of the Army, who was responsible for overseeing the operation of the lease, a claim under the FTCA. On February 17, 1983, the United States Army Claims Service denied the claim on behalf of the United States, and the claimant brought this FTCA suit. He sought the recovery of money damages against the United States on six theories of Alabama tort law. He alleged that the Government had: (1) negligently failed to maintain the forging press; (2) negligently failed to correct known defects in the press; (3) negligently failed to warn him of such defects; (4) negligently failed to inspect the press; (5) negligently inspected the press; and (6) transgressed Alabama's Extended Manufacturers Liability Doctrine (AEMLD).

Following some reciprocal discovery, the Government moved for summary judgment, and the district judge conditionally granted the motion, giving the claimant ten days to demonstrate the existence of any genuinely disputed material fact. Upon the claimant's failure to make such a showing, the court entered the summary final judgment now before us. The court held that the Government, as lessor of the forging press, owed no duty to FMC's employees, such as the claimant, the breach of which could serve as a basis for finding the Government negligent. As for the Government's liability under the AEMLD, the court held that the doctrine, because it is founded on strict liability, cannot serve as a basis for recovery under the FTCA. *See Laird v. Nelms*, 406 U.S. 797, 798–802, 92 S.Ct. 1899, 1900–02, 32 L.Ed.2d 499 (1972).

## II.

In passing on the propriety of the district court's grant of summary judgment, we apply the same legal standard a district court must employ, *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984) (per curiam): that the evidence, viewed in a light most favorable to the party opposing the motion, demonstrated the absence of a genuine issue of material fact and that the movant was entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–58, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). We conclude, as did the district court, that the claimant presented no facts that would authorize a recovery under any of the Alabama tort law theories he has advanced.

 The FTCA imposes liability on the United States for the "negligent or wrongful act or omission of any *employee* of the Government." 28 U.S.C. § 1346(b) (1982) (emphasis added). Neither lessees nor independent contractors are "employees of the government" for the purposes of the FTCA. 28 U.S.C. § 2671 (1982). Because FMC was a lessee of the United States, the Government cannot be held liable under the FTCA for any of FMC's acts.[3] The Government may be liable, however, for the breach of any duty it may have owed FMC's employees. *Lathers v. Penguin Industries*, 687 F.2d 69, 72 (5th Cir.1982); *Aretz v. United States*, 604 F.2d 417, 426–27 (5th Cir.1979).[4] The existence of such a duty is a matter of state law. 28 U.S.C. § 1346(b) (1982); *Lathers*, 687 F.2d at 72.

and the district court found, that at the time of his injury the press was being used to make shell casings for the government, presumably under a contract FMC had with the Department of the Army. The record does not establish this point, however, and in argument before us counsel for third-party defendant FMC stated that the press was being used on a job for Fruehauf Corporation. Counsel's statement is likewise unsupported by the record. Under our analysis of the claimant's tort theories of recovery, however, it matters not whether the press was being used on a contract for the government or Fruehauf.

3. If claimant's accident had occurred while making shell casings pursuant to a government contract, FMC would also be an independent contractor of the government for the purposes of this case. As noted at *supra* note 2, however, whether FMC is viewed as a lessee, or an independent contractor, or both, is of no moment in this case.

4. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## A.

■ The claimant lost his fingers when the forging press he was operating recycled while his fingers were beneath it. To cycle the press, the claimant had to push dual palm buttons with both hands; in this operation, his fingers could not have been beneath the press. Recycling, however, occurred automatically and unexpectedly, without pushing the buttons. Hence, the claimant's hand was free, and he happened to expose it to the injury in question. The claimant contends that the Government had a duty to warn him that the press was defective in that it would recycle in this fashion. Under Alabama law, the lessor of equipment is liable for failing to inform his lessee's employees of a defect in leased equipment only if the defect or danger is hidden and known to the lessor, and not known to the lessee. *Chrysler Corp. v. Wells,* 358 So.2d 426, 428 (Ala.1978); *Crawford Johnson & Co. v. Duffner,* 279 Ala. 678, 189 So.2d 474, 480 (1966).[5] In the situation here, the Government presented a wealth of evidence that FMC knew that the forging press would occasionally recycle.[6] The claimant offered nothing to rebut this evidence.[7] The granting of summary judgment on the claimant's negligent failure to warn theory, therefore, was appropriate.

## B.

■ The claimant contends that the Government had a duty to FMC's employees to maintain the press in a safe operating condition. Assuming *arguendo* that the press was in an unsafe condition, we find no basis for imposing on the Government a duty to maintain the press. The claimant cites no Alabama authority, and we find none, to the effect that the mere leasing of equipment implies such a duty on the lessor's part. Although the parties' lease agreement could have required the Government to maintain the press in a safe operating condition, it did not so provide. Under the agreement, FMC was responsible for the normal maintenance of the press. FMC considered repairs necessitated by recycling as normal maintenance and accordingly handled all such repairs. Both before and after the accident in this case FMC inspected the press on a weekly basis and performed all necessary repairs; the Government never performed any maintenance on the press. The district court properly rejected the claimant's negligent failure to maintain theory of recovery.

## C.

■ The claimant contends that summary judgment was precluded because the record permitted the inference that the Government either negligently failed to inspect or negligently inspected the press. We disagree. The Government was under no contractual obligation to inspect the press, and, under Alabama law, the mere leasing of the machine did not give rise to such an obligation. *See Pate v. United States Steel Corp.,* 393 So.2d 992, 996 (Ala. 1981); *see also Columbia Engineering International, Ltd. v. Espey,* 429 So.2d 955, 963–68 (Ala.1983). The only way the Government could be liable given the terms of the lease agreement in this case would be if the Government had actually inspected the press and negligently failed to dis-

---

**5.** The majority of the Alabama cases alleging the breach of a duty to warn about defective equipment, like those alleging the breach of a duty to maintain or to inspect such equipment, involve claims by employees of independent contractors against the owner of the premises where the employees were working and were injured. We agree with the district court and the parties that these cases are analogous to the instant case, even though the claimant's injury here did not take place on the Government's premises.

**6.** This evidence consisted of depositions in which FMC supervisory personnel acknowledged that the press had recycled prior to the claimant's accident.

**7.** Further, there was no indication that the Government was aware that the press had a tendency to recycle. Indeed, FMC's operating procedures did not provide for notifying the Government when the press recycled.

cover the recycling defect. *See Hughes v. Hughes*, 367 So.2d 1384, 1387 (Ala.1979). The claimant failed, however, to establish that the Government undertook a safety inspection of the press.[8] Accordingly, the district court did not err in rejecting the claimant's negligent failure to inspect or negligent inspection theories of recovery.

### D.

■ The claimant's final contention is that he established a case of liability against the Government under the Alabama Extended Manufacturers Liability Doctrine (AEMLD). To establish liability under this doctrine, a plaintiff must show (1) that the defendant sold or supplied the product that injured him and he was the consumer or ultimate user of such product; (2) that the defendant was in the business of selling or supplying the product; (3) that the product was defective or unreasonably dangerous; and (4) that the defendant expected the product to reach, and that the product actually did reach, the plaintiff without substantial change in its condition. *Casrell v. Altec Industries*, 335 So.2d 128, 132–33 (Ala.1976). A product defect under this doctrine is defined as one "which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose." *Id.* at 133. Claimant contends that the forging

press supplied by the Government in this case was defective because it caused injury when used for its intended purpose.

The district court determined that the AEMLD was based on a "strict liability theory" and under *Laird v. Nelms*, 406 U.S. 797, 798–03, 92 S.Ct. 1899, 1900–02, 32 L.Ed.2d 499 (1972), could not serve as a basis for FTCA liability.[9] *See also Dalehite v. United States*, 346 U.S. 15, 45, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1953); *Aretz v. United States*, 604 F.2d at 426–27. The court therefore held the doctrine inapplicable in a FTCA context.

Claimant argues that the AEMLD is not based on a pure strict liability theory. He contends that, although it was modeled after Restatement (Second) of Torts § 402A (1965), a strict liability rule, the Alabama courts have held that the doctrine is not founded on a pure strict liability theory, but is based on fault. *See Atkins v. American Motors Corp.*, 335 So.2d 134, 137 (Ala. 1976). Accordingly, claimant argues the doctrine's application is not foreclosed by *Laird*. We are not persuaded.

The Alabama courts hold that the AEMLD contains a fault component, but such fault is presumed: "[T]he fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing a product on the market causing

---

**8.** Although employees of the Occupational Safety and Health Administration had been in the FMC plant prior to the claimant's accident, the claimant submitted no evidence indicating that such personnel ever inspected the press for safety violations. Further, while the Army conducted an annual review at the FMC plant, this was done only to determine if the leased forging press was still located at the plant. We interpret Alabama law to require the undertaking of a *safety* inspection as a prerequisite to a finding of liability for negligent inspection under *Hughes v. Hughes*, 367 So.2d at 1387. *See Ranger Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 410 So.2d 40, 42 (Ala.1982) (insurer not liable for negligent inspection where the insurer's inspection was to determine whether to insure the equipment, and, if so, to calculate the correct premium, and was not intended as a general safety inspection). Although *Ranger* involved a suit by the insured rather than an employee of the insured, we find the court's

decision instructive. An inspection cannot be deemed negligent for failing to detect unsafe working conditions if it was not designed to reveal such conditions.

**9.** In *Laird* the claimant sought to recover for property damage which resulted from sonic booms caused by military aircraft. The Court held that the rule of absolute liability for ultra-dangerous activities did not apply to the federal government. The Court focused on the fact that 28 U.S.C. § 1346(b) (1982) makes the government liable only for negligent or wrongful acts on the part of its employees. The logic of the opinion extends beyond instances involving ultra-dangerous activities to all cases where theories of strict or absolute liability are sought to be applied to the government. *See Craine v. United States*, 722 F.2d 1523, 1526 (11th Cir. 1984); *see also Aretz v. United States*, 604 F.2d 417, 427 (5th Cir.1979).

personal injury or property damage, when used to its intended purpose." *Casrell*, 335 So.2d at 132. In short, a plaintiff need not prove that the defendant was negligent; negligence is imputed to the seller or supplier as a matter of law. *Id.*[10] Such a rule, if we applied it here, would obviate the need for the claimant to show negligence on the part of government employees as required by 28 U.S.C. § 1346(b) (1982).[11] *Laird* precludes such a result.[12]

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

VANCE, Circuit Judge, concurring.

I concur in the court's judgment.

---

**10.** Section 402A of the *Restatement* totally abandons the requirement of showing fault, or negligence, in products liability suits. In contrast, the rule adopted by the Alabama Supreme Court, though a form of strict liability, retains "the 'fault' concept based on a standard of conduct causally related in fact to the defective condition of the unreasonably dangerous or unsafe product." When, however, the defendant "markets a product not reasonably safe when applied to its intended use in the usual and customary manner," fault need not be proved—it is supplied "as a matter of law." The culpability of the manufacturer or supplier arises from his conduct in placing on the market a product that causes personal injury or property damage when it is applied to its intended use.
Note, *Torts—Product Liability—A Manufacturer, Supplier, or Seller Who Markets a Product Not Reasonably Safe When Applied to Its Intended Use in the Usual and Customary Manner Is Negligent as a Matter of Law*, 28 Ala.L.Rev. 747, 756–57 (1977) (footnotes omitted).

**11.** The Alabama Supreme Court has avoided labeling the AEMLD a pure strict liability doctrine in part to preserve certain affirmative defenses, such as contributory negligence, which the court apparently feels do not exist under the Restatement (Second) of Torts § 402(A) (1965): "[T]he [only] practical distinction ... between our holding and the Restatement is that our holding will allow certain affirmative defenses not recognized by the Restatement's no-fault concept of liability." *Atkins v. American Motors Corp.*, 335 So.2d at 137. Another factor motivating the court's treatment of fault under the AEMLD is a perplexing problem involving Alabama's wrongful death act, Ala.Code tit. 7, § 23 (1958). In *Geohagan v. General Motors Corp.*, 291 Ala. 167, 170–71, 279 So.2d 436, 438–39 (1973), the court held that, under this act, the

plaintiff's damages must be based upon the defendant's culpability; compensatory damages cannot be awarded. Were a defendant to be found liable for wrongful death under a theory of strict liability, however, the plaintiff could not be awarded money damages because he would not have proved that the defendant was culpable. *See Atkins*, 335 So.2d at 143–44.

**12.** We note that the Government would not be liable in this case even if we were to rule that the AEMLD is not a strict liability theory for FTCA purposes. The AEMLD applies only to those sellers or suppliers engaged in the business of selling or supplying the product in question. *Casrell*, 335 So.2d at 132. Here, there was no showing that the Government was in the business of supplying presses. Claimant cites us to *Medley v. United States*, 480 F.Supp. 1005 (M.D.Ala.1979). In *Medley*, the Government supplied dump trucks to county employees. The trial court, while finding that the trucks were not dangerous when applied to their intended use, held that as a supplier the Government did owe a duty to the users of the product. *Id.* at 1010. This conclusion, however, was based on the fact that, although the Government did not manufacture the trucks, it actively participated in their design and made certain modifications thereto. Given this fact, the court held that the Government was "under a duty to exercise reasonable care to design a safe product." *Id.* There is no allegation in the present case that the Government was in any way responsible for design of the press. All that the claimant asserted was that the Government leased the machine to FMC. Without more, we decline to infer that the Government was in the business of supplying the type of press involved in this case.