**Brenda PERKINS, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. Civ.A.99–1757(JMF).**

United States District Court, District of Columbia.

Nov. 22, 2002.

David E. Fox, David E. Fox & Associates, Washington, DC, for Plaintiff.

Diane Marie Sullivan, U.S. Attorney's Office, Michael E. Miller, Office of Corporation Counsel, D.C., Washington, DC, for Defendants.

## FINDINGS OF FACT

FACCIOLA, United States Magistrate Judge.

1. Plaintiff, Brenda Perkins ("Perkins") currently works for the District of Columbia Department of Human Services as a Manager in the Office of the Director and has worked there for the past 18 years.

2. Wayne Aaron Person ("Person") worked for St. Elizabeths Hospital ("St.Elizabeths"), also known as the District of Columbia Commission on Mental Health, in 1997.

3. On April 4, 1997, Perkins was working on the grounds of St. Elizabeths, located in the District of Columbia. The accident that is the basis of plaintiff's complaint occurred on the hospital grounds that day.

4. While in her car, approaching an intersection to exit the hospital grounds onto Martin Luther King Boulevard., Perkins was stopped on an incline behind other cars.

5. Person, then an employee of the District of Columbia, was driving a 1990 Dodge Dakota pickup truck located directly in front of Perkins' car.

6. Person's truck, suddenly and without warning, backed down the incline and collided with Perkins' vehicle.

7. The impact of the accident jolted Perkins inside the vehicle. Perkins suffered injuries to her back and neck.

8. Perkins' vehicle sustained damage to the right, front headlight, hood, and grill.

9. Following the accident, Person exited his truck and approached Perkins' car. He asked Perkins if she was hurt. He apologized to her and told her that the transmission in the car was malfunctioning and that he had reported the problem, but was instructed to drive the truck anyway.

10. Mary Brown, a witness at the scene of the accident, was driving on Martin Luther King Boulevard attempting to turn onto St. Elizabeths grounds when she heard the collision.

11. Brown approached Perkins' car and asked her if she was "all right." Perkins responded that she was injured.

12. The Metropolitan Police Department was called to the scene of the accident and Perkins and Person exchanged relevant personal and vehicular information.

13. In the days following the accident, Perkins experienced great amounts of back and neck pain, as well as a persistent headache. Due to pain following the accident, Perkins missed approximately 94 hours of work.

14. Following the accident, Perkins went to Dr. Talatt Maximous for treatment. Dr. Maximous recommended physical therapy and prescribed pain medication to help Perkins manage the pain. In June 1997, Dr. Maximous also ordered an MRI to determine if any other problems existed.

15. Perkins' pain following the accident kept her from handling routine household tasks including cleaning the bathroom and running the vacuum cleaner. She continues to experience pain in her back and neck and her persistent headaches have not subsided.

16. Prior to the accident, Perkins engaged in various physical activities including dancing, walking, and working out at a gym. Since the accident, she has been unable to participate in these activities to the extent she did prior to the accident.

17. The 1990 Dodge Dakota pickup truck that Person was driving was owned by General Services Administration ("GSA"), a division of the United States Federal Government.

18. GSA leased the truck to St. Elizabeths from 1990 to 1998 and Person was driving the truck as a function of his duties as an employee of the District of Columbia and St. Elizabeths.

19. According to Michelle Dee, Fleet Manager at GSA, the leasing agency is responsible for verifying that the driver of the leased vehicle is licensed. The leasing agency is also responsible for insuring the vehicle.

20. A search of the maintenance record for the truck kept by GSA revealed no indication that the truck was repaired following damage from an accident. The maintenance record also lacked any reference to a transmission problem. The truck had 39,370 miles on it when it was returned to GSA. GSA later sold the truck at an auction in 1998.

21. Michael Young, Fleet Manager at St. Elizabeths, verified that St. Elizabeths has an established procedure for allowing an employee to drive an automobile leased from GSA. The employee must obtain a copy of his or her driving record from the state where they reside and fill out an application. Once the Motor Vehicle Operations Department at St. Elizabeths has received this information,

they either approve or deny the application. The approved drivers receive a government motor vehicle operators card and are permitted to drive an assigned vehicle leased from GSA. Every time the employee renews his or her state driver's license, the employee must bring an updated driving record to the Motor Vehicle Operations Department at St. Elizabeths

## CONCLUSION OF LAW

Plaintiff cannot hold the United States liable for her injuries merely because the United States leased to the District of Columbia the vehicle that struck her vehicle.

## MEMORANDUM OPINION

The Federal Tort Claims Act provides, in pertinent part:

(b)(1) Subject to the provisions of chapter 171 of this title [28 USCS §§ 2671 et seq.], the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1993).

Plaintiff is not premising liability on any "wrongful act or omission of any employee of the Government." The only act of an agent of the United States that could possibly serve as a predicate of liability is the act of the GSA employees who effectuated the policy of the United States to lease vehicles from the GSA fleet to the District of Columbia and no one is suggesting that the act of leasing the truck was in any way negligent or wrongful. Thus, plaintiff can prevail only by relying upon the District of Columbia Motor Vehicle Safety Responsibility Act that provides:

Whenever any motor vehicle, after the passage of this subchapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

D.C.Code Ann. § 40–408 (1990). A party's liability under § 40–408 turns on whether that party is an "owner" under the statute. Plaintiff, therefore, has to argue that since the United States owned the car and the District of Columbia used it with its consent, the driver of the truck is deemed its agent and the United States is responsible for the truck driver's negligence, *respondeat superior*, even though the truck driver worked for the District of Columbia.

Unfortunately for the plaintiff, however, it has been clear since at least the decision in *Dalehite v. United States*, 346 U.S. 15, 44, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), that the waiver of sovereign immunity in the Federal Tort Claims Act extends only to a wrongful act or omission of any employee of the government. Without the showing of such an act, the imposition of liability upon the United States is impermissible. Thus, the Supreme Court later described

the significance of its decision in *Dalehite* in the following terms:

> This Court's resolution of the strict-liability issue in *Dalehite* did not turn on the question of whether the law of Texas or of some other State did or did not recognize strict liability for the conduct of ultrahazardous activities. It turned instead on the question of whether the language of the Federal Tort Claims Act permitted under any circumstances the imposition of liability upon the Government where there had been neither negligence nor wrongful act. The necessary consequence of the Court's holding in *Dalehite* is that the statutory language "negligent or wrongful act or omission of any employee of the Government," is a uniform federal limitation on the types of acts committed by its employees for which the United States has consented to be sued. Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of "misfeasance or nonfeasance," 346 U.S. at 45, 73 S.Ct. 956, on the part of the Government.

*Laird v. Nelms*, 406 U.S. 797, 798–99, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

The federal courts have, therefore, rejected any attempt to foist liability upon the United States under the Federal Torts Claims Act without a showing that an agent or employee of the United States committed a negligent act or omission. *Lively v. United States*, 870 F.2d 296, 300 (5th Cir.1989); *Gober v. United States*, 778 F.2d 1552, 1554 (11th Cir.1986); *Malone v.* *United States*, 581 F.2d 582, 584 (6th Cir. 1978).

The District of Columbia Motor Vehicle Safety Responsibility Act imposes liability in any case, such as this one, in which the giving of consent by the owner to the driver is not, in itself, a negligent act. The father's giving the car keys to his prodigal son, who has two drunk driving convictions may be, in itself, a negligent act imposing liability upon the father irrespective of this Act. The same father's giving the car keys to his abstemious, Eagle Scout son, who has a perfect driving record, is hardly a negligent act but may subject the father to liability for the son's negligent acts solely because of the Act. In the latter situation, liability is imposed upon the father irrespective of any negligent act or omission by him. But, it is that kind of liability without fault that cannot be imposed upon the United States under the limited waiver of sovereign immunity in the Federal Tort Claims Act. It is, therefore, hardly surprising, that with one lonely exception,[1] the federal courts have rejected all attempts to impose liability upon the United States under so called "permissive use" statutes, like the District of Columbia Motor Vehicle Safety Responsibility Act, where the most the plaintiff can show is that the vehicle that caused plaintiff's injuries was owned by the United States and used with its permission. *Craine v. United States*, 722 F.2d 1523 (11th Cir.1984); *Rodriguez v. United States*, 455 F.2d 940 (1st Cir.1972); *United States v. Hull*, 195 F.2d 64, 66 (1st Cir.1952); *Western Nat'l Mutual Ins. Co. v. United States*, 964 F.Supp. 295, 297–98

---

1. *Essig v. United States*, 675 F.Supp. 84, 90 (E.D.N.Y.1987). Note that in this case the court found that the person driving the car was acting within the scope of his authority as a federal DEA agent when he caused the government car he was driving to collide with a cyclist. Since he was acting in his capacity as a federal agent at the time, his negligent act could serve as a predicate of liability under the Federal Torts Claims Act without any recourse to the "permissive use" New York statute. The court's discussion of the latter statute was, therefore, unnecessary *dictum.*

(D.Minn.1997); *Cropper v. United States,* 81 F.Supp. 81 (N.D.Fla.1948); *Long v. United States,* 78 F.Supp. 35 (S.D.Cal. 1948).

Since plaintiff, after trial, still cannot establish that her injuries and the damage to her were caused by a negligent act or omission by an agent or employee of the United States, I must enter judgment for the United States. I do so in a separate document.